# JUNE TERM, 1902.

## ALDERTON v. WILLIAMS.

1. PROMISSORY NOTES—POSSESSION BY INDORSER—PAYMENT.
   Where the makers of a promissory note admit that they have not paid it, the possession of the note, and its production on trial, by one who indorsed it before delivery, is *prima facie* evidence that he paid it in full at maturity.

2. SAME—RENEWALS—RECOUPMENT BETWEEN JOINT MAKERS.
   An indorser of promissory notes to the amount of $5,000 paid the notes at maturity, and brought an action against the makers to recover the full amount paid by him. The notes were renewals of others indorsed by plaintiff before delivery in pursuance of an agreement whereby plaintiff was to indorse notes to the amount of $20,000 for the purpose of establishing the makers in a certain manufacturing business, in consideration that they would purchase goods of him. *Held,* that, as it was necessary for plaintiff to show the contract in order to maintain his action, the defendants could recoup damages for his failure to indorse notes to the amount agreed upon. LONG, J., dissenting.

Error to Clare; Dodds, J. Submitted October 10, 1901. (Docket No. 43.) Decided June 3, 1902.

*Assumpsit* by George A. Alderton against Charles F. Williams and Lafayette C. Williams upon promissory notes. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Reversed.

*George J. Cummins* ( *C. W. Perry* and *C. H. Rose*, of counsel ), for appellants.

*James H. Davitt*, for appellee.

LONG, J. This action is in *assumpsit*, commenced by writ of attachment, to recover upon six promissory notes given by the defendants to the Commercial National Bank of Saginaw, and indorsed by plaintiff. The declaration is on the common counts, with copies of notes attached, and notice that they would be given in evidence under the money counts. Defendants pleaded the general issue, and gave notice of recoupment, the notice being as follows:

"That the several notes upon which the action is based, copies of which are attached to the declaration in this cause, were executed by these defendants pursuant to a certain contract made and entered into between the said plaintiff and these defendants on or about August 1, 1898, which said contract was, in substance and effect, as follows, and arose under the following conditions, that is to say: That on and prior to August 1, 1898, the said defendants were engaged in the business of manufacturing heading, and had in the village of Beaverton, Gladwin county, Michigan, a heading mill, well equipped for and used in said business, and of the value of, to wit, $5,000; that the heading business so carried on by said defendants was of great profit to said defendants, and that they were making in said business large sums of money monthly, viz., the sum of $500 per month; that on or about August 1, 1898, the said plaintiff represented to said defendants that an arrangement could be made to the material benefit and profit of both said plaintiff and said defendants if the said defendants would abandon their said business of manufacturing heading at their said mill at Beaverton, and remodel the said mill into a stave mill, and enter upon the business of manufacturing staves; the cost and expenses of so remodeling said heading mill, and of purchasing materials and supplies for such stave business, and getting the said stave business established, being estimated to be the sum of about $20,000; and, upon such representations so made by said plaintiff, it was then and there mutually agreed between the said plaintiff and the said defendants that the said plaintiff should and would indorse the notes of the said defendants to the amount of $20,000, as the same was needed for the purpose of installing said stave mill and establishing in said stave business; that the said defendants were to use the money so obtained upon said notes in tearing down and remodeling the said

heading mill, and in putting up a new stave mill, and in manufacturing staves. It was further agreed that the said defendants were to have a store in connection with their said mill, and were to pay for all supplies, timber, and labor used in said stave business out of said store as far as possible, and that the defendants were to look after the management of said business and the manufacturing of said staves; that the said business was to be carried on at Beaverton, Gladwin county, Michigan; and that the defendants were to purchase their stock of groceries and supplies for their said store from said plaintiff, who was interested in a wholesale grocery store in Saginaw, Michigan, and was doing a wholesale grocery business under the firm name of George A. Alderton & Co. It was further agreed that said business of manufacturing staves should be carried on by said defendants as long as they could get timber in that locality. It was further agreed that the said plaintiff, in addition to the profits derived from the sale of the said groceries and supplies which he should make to the defendants under said agreement, was to have a reasonable compensation for his indorsement on said notes.

"The said defendants will further give in evidence and insist on the said trial that they have fully performed the said agreement according to the terms and true intent and meaning thereof in all things on their part to be fulfilled and performed, but that the said plaintiff did not nor would fulfill or perform the said agreement on his part, but has wholly failed so to do in this, to wit: That after said defendants had entered upon the performance of said contract by fitting up their said mill at Beaverton with proper machinery and appliances, and remodeling the same from a heading mill to a stave mill, purchasing a large amount of timber supplies, and all things necessary to successfully carry on their part of said contract, and after the said defendants had expended for such purpose not only the entire proceeds of the said notes upon which this action is based, but also all of the individual funds of said defendants which they were able to raise to put into said business, the said plaintiff refused to indorse any more notes for the said defendants, or to assist the said defendants in procuring any further funds for the prosecution of said business; that, by reason of such refusal of said plaintiff to indorse the notes of the defendants pursuant to the terms of said agreement, the defendants were

wholly unable to continue the business of manufacturing staves, and were obliged to close up their said business, and dispose of their said stave mill and of their stock of materials, supplies, machinery, etc., on hand, for the best prices obtainable for the same, to the great damage and loss of the defendants, whereby the said defendants have been greatly injured and have sustained damages to a large amount, to wit, the sum of $10,000.

"That by reason of the action of said plaintiff in the premises in inducing these defendants to remodel their said heading mill and abandon said business of manufacturing heading for the purpose of engaging in the stave business, and then refusing to carry out his contract or agreement to indorse the notes of the said defendants to raise the funds necessary for the prosecution of the said stave business, the said defendants have been and were deprived of the profits which they would have made in the said heading business, amounting to the sum of $500 per month for the period of at least 10 months, such total loss of profits amounting in all to a large sum, to wit, the sum of $5,000; to the damage of said defendants in the sum of, to wit, $5,000.

"That at the time when the said plaintiff so refused to carry out his said contract, whereby the said defendants were obliged to abandon the said stave business, the said defendants had on hand a large quantity, to wit, 1,000 cords, of bolts which they had purchased or manufactured for the purpose of manufacturing the same into staves, and, if the said plaintiff had complied with his said contract, the said defendants would have manufactured the said bolts into staves, and would have realized large profits therefrom; and, by reason of the action of the said plaintiff in refusing to carry out his said agreement, the said defendants were prevented from manufacturing said bolts into staves, and from making the profits which they otherwise would have made therefrom, to wit, the sum of $1,500, thereby sustaining damages to a large amount, to wit, to the sum of $1,500.

"That, at the time said plaintiff so refused to carry out his said contract, the said defendants had on hand a large quantity, to wit, 500,000 feet, of logs suitable to make bolts to be manufactured into staves, and which they had purchased and gotten out for that purpose; and if said plaintiff had complied with his said contract the said defendants would have manufactured the said logs

into staves, and would have realized large profits therefrom; but that, by the action of the said plaintiff in refusing to carry out his said agreement, the said defendants were compelled to have the said logs manufactured into lumber, for which they were not suitable, in order to realize anything out of the same, and were thus deprived of the profits which they would have made could they have manufactured the said logs into staves, to wit, the sum of $3,000, and thereby suffered damages to a large amount, to wit, the sum of $3,000."

The cause came on for trial before a jury. Plaintiff's counsel, in his opening to the jury, stated:

"These notes, six in number, which, without interest, amount to $5,000, were made payable to the Commercial National Bank of Saginaw. They were signed by the defendants, Williams Brothers, and on the back of each note was written, 'George A. Alderton.' The proof will show that, when the notes fell due, Williams Brothers, whose duty it was to pay them, failed to do so, and the bank demanded payment of Mr. Alderton by reason of his signature on the back of the notes, and he was compelled to take them up by paying the amount due to the bank."

The notes were then offered in evidence without objection. Counsel for defendants then made his opening statement to the court and jury, substantially as follows:

"If we show to your satisfaction that growing out of this arrangement of Mr. Alderton with us to furnish indorsements to the amount of $20,000 to enable the defendants to carry on this buisness, and that it was necessary for him to do that to put them on their feet to manufacture staves, and that, because of the failure of him to carry out his contract, these losses were sustained, we shall ask to recoup these damages which these defendants sustained in consequence of their business being broken up, and to sell as best they could, to recoup that against whatever would be Mr. Alderton's due on the notes which he paid and which he had indorsed; and, if that damage shall equal these notes, it shall be offset against the notes. If it shall amount to more, then we shall expect a verdict for whatever damages they sustained over and above the amount of the notes in question."

Defendants then offered evidence to show the facts set

up in the notice of recoupment. Counsel for plaintiff objected to the introduction of this testimony, for the reason that the notice of recoupment fails to show any breach of the contract sued upon so as to become a matter of recoupment. The court held that the contract sued upon by the plaintiff was separate and distinct from the one set up in the notice, and directed verdict for plaintiff for the amount of the notes and interest, the total being $5,242.39. Defendants bring error. But two questions are raised: (1) Was it admitted or proved that plaintiff paid the notes before suit was brought? (2) Were the defendants entitled to recoup damages under the notice?

I am of the opinion that payment of the notes must be presumed from the fact that plaintiff had possession of them, and produced them on the trial. It is admitted that the proceeds of the notes were received by the defendants. It is apparent, therefore, that prior to their maturity the notes were delivered to and held by the bank, which was the payee. As to the payee the plaintiff was a joint maker, and as much bound to pay them at maturity as the defendants. It is admitted that the defendants did not pay them, and the plaintiff having them in possession and producing them on the trial is *prima facie* evidence that he paid them in full at their maturity, according to his obligation. In *McGee* v. *Prouty*, 9 Metc. (Mass.) 547 (43 Am. Dec. 409), it was held that the possession of a promissory note by one of the parties liable to pay it is *prima facie* evidence of payment, and he is to be treated as a *bona fide* holder, unless the contrary is made to appear. That court cited in support of this principle: *Dugan* v. *U. S.*, 3 Wheat. 172; *Baring* v. *Clark*, 19 Pick. 220; *Northampton Bank* v. *Pepoon*, 11 Mass. 288. In 3 Rand. Com. Paper, § 1475, and 2 Daniel, Neg. Inst. § 1227, the same principle is laid down. In the last-named work it is said, "The possession of the note by the maker is presumptive evidence that he has paid it."

It appears that the notes sued upon were renewals of former ones, which were given in pursuance of the con-

tract mentioned in the notice of recoupment. The claim of the defendants is that the plaintiff agreed in this contract to indorse notes for them in the sum of $20,000, to enable them to carry on their business. It appears that he did indorse notes to the amount of $5,000, and then refused to indorse any more. The notes indorsed were discounted at the bank, and renewed from time to time. The notes sued upon are not the original notes so first given, but renewals of them; and it is the contention of counsel for plaintiff, and the court below so held, that the plaintiff's action was not upon the same contract that defendants seek to recoup against.

The notes sued upon were renewals of former ones, and bear date December 18, 1899, December 19, 1899, December 26, 1899, January 18, 1900, February 20, 1900, and March 2, 1900, and form no part of the original contract. Each note rested upon its own consideration, and was a complete and separate contract. The plaintiff was not to furnish money to defendants, but only to indorse for them, leaving them to obtain money, if they could, upon the paper when indorsed, and to pay the notes when they became due. The law implies a promise on the part of the defendants to reimburse the plaintiff in case he had to pay as conclusively as if a stipulation to that effect had been written in the notes themselves, and the contract so implied is no more open to dispute or variation than if it had been reduced to writing. It is well settled that no damages can be recouped except such as spring out of the contract upon which the suit is brought. *Molby* v. *Johnson*, 17 Mich. 382; *Forrest* v. *Johnson*, 100 Mich. 321 (58 N. W. 1005); *Van Epps* v. *Harrison*, 40 Am. Dec. 323 (s. c., 5 Hill, 63). As the notes sued upon are separate and distinct, and had separate and distinct considerations, from the contract set up in the notice of recoupment, and for the breach of which the defendants seek to recoup, I think the court was not in error in directing the verdict for plaintiff. The cases cited by defendants' counsel are not in conflict with this rule. In both *Batterman*

*v. Pierce,* 3 Hill, 171, and *Ward* v. *Fellers,* 3 Mich. 281, the damages sought to be recouped grew out of the contracts sued upon.

The judgment should be affirmed.

MONTGOMERY, J.   I concur with Mr. Justice LONG in holding that the presumption arising from plaintiff's possession is sufficient, *prima facie,* to show the payment of the notes in question by him; but I am unable to agree with his conclusion that the defense of recoupment is not open in this case.   The cases which he cites as sustaining his conclusion do not, in my judgment, support the holding.   *Molby* v. *Johnson,* 17 Mich. 382, was a case in which distinct purchases of property were made.   The horses in question were paid for in cash.   On the same occasion additional articles of personal property were purchased, and a note given for a portion of the purchase price.   The court held, in an action brought upon the note given for the purchase price of these distinct articles of personal property, that recoupment could not be had for damages sustained by reason of a false warranty of the *horses* sold.   The case of *Forrest* v. *Johnson,* 100 Mich. 321 (58 N. W. 1005), is to the same effect.   *Van Epps* v. *Harrison,* 40 Am. Dec. 314 (s. c., 5 Hill, 63), is not an authority upon the question; but the note to that case contains a citation to numerous cases which support the holding of *Molby* v. *Johnson.*   "But," quoting from the note, "although it is necessary that the plaintiff's claim and the defendant's damages should grow out of the same contract or transaction to admit of recoupment, all the stipulations on both sides need not appear in the same instrument.   They may appear in different instruments, or they may be in writing on one side and oral on the other.   Thus, where the plaintiff sold certain standing wood to the defendants, which they were to have a certain time to remove, and guaranteed them against loss by fire from burning over adjacent fallow land, and took a note for the price, it was held, in an action on the note, that the de-

fendants could recoup damages for a destruction of the wood by the fire guaranteed against;" citing *Batterman* v. *Pierce*, 3 Hill, 171, which is an instructive case. See, also, *Sanger* v. *Fincher*, 27 Ill. 346.

In the present case the plaintiff's right to maintain this action upon the notes, both himself and defendants being makers, arises not alone from the fact of his having paid the notes, but out of the contract between himself and defendants, under which the indorsements were made. Reference to that contract is essential to determine the rights of the parties. The plaintiff's action depends upon the contract, and, in my opinion, this being so, a recoupment of defendants' damages, incurred by the plaintiff's breach of the same contract, may be had in this action.

The judgment should be reversed, and a new trial ordered.

HOOKER, C. J., concurred with MONTGOMERY, J. MOORE and GRANT, JJ., took no part in the decision.